ROBERT B. CUMMINGS (#13186)
THE SALT LAKE LAWYERS
10 Exchange Place, Ste. 622
Salt Lake City, Utah 84111
T: (801) 590-7555
F: (801) 384-0825
E: Robert@thesaltlakelawyers.com

KELLY FOWLER (#13213)
KELLY A. FOWLER, ATTORNEY AT LAW
10 Exchange Place, Ste. 622
Salt Lake City, Utah 84111
T: (801) 520-6995
F: (801) 747-6849
E: fowlerlegal@live.com

MARK J. GERAGOS (Cal. SBN #108325)
BEN J. MEISELAS (Cal. SBN #277412)
GERAGOS & GERAGOS
644 S Figueroa St
Los Angeles, California 90017
T: (213) 625-3900
F: (213) 625-1600
E: geragos@geragos.com
[Pro Hac Vice applications pending]

*Attorneys for THE ESTATE OF DILLON TAYLOR, CODY TAYLOR, JERRAIL TAYLOR, TEESHA TAYLOR, and ADAM THAYNE*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE ESTATE OF DILLON TAYLOR; CODY TAYLOR; JERRAIL TAYLOR; TEESHA TAYLOR; and ADAM THAYNE;<br><br>Plaintiffs,<br>v.<br><br>SALT LAKE CITY; CITY OF SOUTH SALT LAKE; SALT LAKE COUNTY; BRON CRUZ; ANDREW SYLLELOGLU; UPPSEN DOWNES; CHRIS KOTRODIMOS; JAMES SPANGENBERG; CHIEF MIKE BROWN; VAUGHN DELAHUNTY; CRAIG HICKEN; CHASE HERMANSEN; JOE SUTERA; CHIEF JACK CARRUTH; and JOHN AND JANE DOES 1-35;<br><br>Defendants. | **COMPLAINT FOR DAMAGES (VIOLATION OF CIVIL RIGHTS)**<br><br>Case No. 2:15-cv-00769-DN<br><br>Judge David Nuffer<br><br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiffs Cody Taylor, Jerrail Taylor, and Teesha Taylor, as individuals and on behalf of the Estate of Decedent, Dillon Taylor, along with Adam Thayne, individually, allege as follows:

## PRELIMINARY STATEMENT

1.      On August 11, 2014, brothers Dillon and Jerrail Taylor, and their cousin Adam Thayne, were walking together in Salt Lake City on their way to the 7-eleven. All three boys were peaceful, non-threatening, and unarmed at all times.

2.      A person who refused to identify herself called 911 making a confused, incoherent, and convoluted report about some kids the caller viewed as maybe suspicious. The caller told the 911 operator that she did not feel threatened and that no one was in danger. The caller later admitted to drinking Vodka earlier that evening.

3.      That call led Salt Lake City police officers Bron Cruz, Uppsen Downes, and Andrew Sylelloglou to be dispatched to the 7-Eleven located at 2102 South State Street in South Salt Lake City, Utah.

4.      After pulling into the 7-Eleven, Cruz immediately went **"guns on,"** following Dillon who was minding his own business. Cruz demanded Dillon show his hands. As Dillon attempted to comply, Defendant Cruz fired two rapid-succession shots – one slicing through Dillon's heart and the other piercing his hand and abdomen.

5.      The body-cam captured it all. The graphic video of the incident can be seen at the following link: https://www.youtube.com/watch?v=01ZwvYqMRhQ.

6.      As Dillon lay dying in his own expanding pool of blood, Defendant Cruz rolled Dillon to his stomach, placed Dillon in handcuffs and searched Dillon's pockets. Two minutes

2

passed when Defendant Cruz took out a small gauze pad used for minor cuts. Cruz never lifted Dillon's shirt to identify the fatal wound and source of blood.

7.      Defendant Cruz and each of the Defendant Officers named in the Complaint were improperly trained and groomed through a vicious culture and cycle of shoot-to-kill-first, avoid questions and accountability later, beginning at the start of their careers and reinforced throughout. This entrenched departmental detachment from human life and the consequences of excessive deadly force is evident through the shocking, despicable explanation told by Defendant Cruz to investigators after killing Dillon. Defendant Cruz stated he shot-to-kill because when he briefly made eye contact with Dillon, Defendant Cruz interpreted Dillon's eyes as having a "defiant look."   Defendant Cruz stated:

> *Um, and his eyes were just complete 100% defiance. He had this, this look on his face like, you know, like I, ah, hate? Um, like he was, he was not going to do anything that I said. Um, and it was just a horrible feeling, um, looking at him. Having him, you know, just the, it was horrible. Just hate, defiance, that he had in his eyes.*

8.      Video of the shooting shows that Dillon's back was turned to Defendant Cruz making it impossible for Defendant Cruz to "sense" a look of "defiance" in Dillon's eyes. Regardless, in the United States of America, and in Utah, citizens expect consequences and not cover-up when unarmed teenagers like Dillon are killed because of the irrational subjective perceptions of "defiance" by trigger-happy law enforcement. This federal lawsuit is being brought out of necessity because the Salt Lake City Police Department and all Defendants defy accountability and defy justice and continue to attempt to justify the unlawful killing of an unarmed boy named Dillon Taylor.

9.  Indeed, Dillon's death was not the only constitutional violation committed by Defendants that August evening.

10.  After Defendant Cruz had killed Dillon Taylor, officers from the Salt Lake City and South Salt Lake City Police Departments, as well as investigators from Salt Lake County, detained Adam and Jerrail for more than five hours; the majority of which, the boys spent handcuffed and alone in separate police interrogation rooms.

11.  None of the governmental agencies holding Adam and Jerrail had probable cause to arrest them after the shooting, let alone cause sufficient to detain them against their will for investigative purposes.

12.  The needless and unjustified escalation of a routine investigation, the needless and unjustified use of deadly force against Dillon Taylor, and the needless and unjustified arrest and detention of Adam Thayne and Jerrail Taylor, were without basis, unlawful, and violated their clearly established right to be free of unreasonable seizure.

13.  Plaintiffs respectfully this Court and a jury of their peers hold Defendants responsible for their blatant disregard of Plaintiffs' constitutional rights, and the senseless deprivation of life and liberty that resulted from their unconstitutional acts.

## PARTIES

14.  Plaintiff Cody Taylor ("Cody") is a citizen of the United States and a resident of Salt Lake County, State of Utah. Cody is the older half-brother of Dillon Taylor. Dillon's parents are both deceased, thus Cody is heir and personal representative of the Estate of Dillon Taylor.

15.  Plaintiff Jerrail Taylor ("Jerrail") is a citizen of the United States and a resident of Salt Lake County, State of Utah. Jerrail is the brother of Dillon Taylor. Jerrail and Dillon's

parents are both deceased, thus Jerrail is heir and personal representative of the Estate of Dillon Taylor.

16.     Plaintiff Teesha Taylor ("Teesha") is a citizen of the United States and a resident of Salt Lake County, State of Utah. Teesha is the sister of Dillon Taylor. Teesha and Dillon's parents are both deceased, thus Teesha is heir and personal representative of the Estate of Dillon Taylor.

17.     Plaintiff Adam Thayne ("Adam") is a citizen of the United States and a resident of Salt Lake County, State of Utah. Adam is the cousin of Dillon Taylor.

18.     Defendant South Salt Lake City ("South Salt Lake") is a political subdivision of the State of Utah.

19.     Defendant Salt Lake City is a political subdivision of the State of Utah.

20.     Defendant Salt Lake County is a political subdivision of the State of Utah.

21.     At all relevant times, Defendant Bron Cruz ("Defendant Cruz") was a police officer with the Salt Lake City Police Department. At all times alleged in this Complaint, Defendant Cruz was acting within the course and scope of his employment. Plaintiffs are suing Defendant Cruz in his individual capacity.

22.     At all relevant times, Defendant Andrew "Glu" Sylleloglu ("Defendant Sylleloglu") was a police officer with the Salt Lake City Police Department. At all times alleged in this Complaint, Defendant Sylleloglu was acting within the course and scope of his employment. Plaintiffs are suing Defendant Sylleloglu in his individual capacity.

23.     At all relevant times, Defendant Uppsen Downes ("Defendant Downes") was a police officer with the Salt Lake City Police Department. At all times alleged in this Complaint,

5

Defendant Downes was acting within the course and scope of his employment. Plaintiffs are suing Defendant Downes in his individual capacity.

24.     At all relevant times, Defendant Chris Kotrodimos ("Defendant Kotrodimos") was a police officer with the Salt Lake City Police Department. At all times alleged in this Complaint, Defendant Kotrodimos was acting within the course and scope of his employment. Plaintiffs are suing Defendant Kotrodimos in his individual capacity.

25.     At all relevant times, Defendant James Spangenberg ("Defendant Spangenberg") was a police officer with the Salt Lake City Police Department. At all times alleged in this Complaint, Defendant Spangenberg was acting within the course and scope of his employment. Plaintiffs are suing Defendant Spangenberg in his individual capacity.

26.     At all relevant times, Defendant Vaughn Delahunty ("Defendant Delahunty") was an officer or investigator employed by Salt Lake County. At all times alleged in this Complaint, Defendant Delahunty was acting within the course and scope of his employment. Plaintiffs are suing Defendant Delahunty in his individual capacity.

27.     At all relevant times, Defendant Craig Hicken ("Defendant Hicken") was an officer or investigator employed by Salt Lake County. At all times alleged in this Complaint, Hicken was acting within the course and scope of his employment. Plaintiffs are suing Hicken in his individual capacity.

28.     At all relevant times, Defendant Chase Hermansen ("Defendant Hermansen") was a detective with the South Salt Lake City Police Department. At all times alleged in this Complaint, Defendant Hermansen was acting within the course and scope of his employment. Plaintiffs are suing Defendant Hermansen in his individual capacity.

29.     At all relevant times, Defendant Joe Sutera ("Defendant Sutera") was a detective with the South Salt Lake City Police Department. At all times alleged in this Complaint, Defendant Sutera was acting within the course and scope of his employment. Plaintiffs are suing Defendant Sutera in his individual capacity.

30.     At all relevant times, Defendant Interim Police Chief Mike Brown ("Chief Brown") was the Chief of the Salt Lake City Police Department and ultimately responsible for the officers, detectives, and investigators within his command. His lack of oversight and supervision, and his disregard for the constitutional rights of the public, resulted in the wrongdoings alleged herein, including the unlawful shooting death of Dillon Taylor and the unlawful and unconstitutional detentions, arrests, and interrogations of Plaintiffs Adam Thayne and Jerrail Taylor.

31.     At all relevant times, Defendant Jack Carruth ("Chief Carruth") was the Chief of the South Salt Lake City Police Department and ultimately responsible for the officers, detectives, and investigators within his command. His lack of oversight and supervision, and his disregard for the constitutional rights of the public, resulted in the wrongdoings alleged herein, including the unlawful and unconstitutional detentions, arrests, and interrogations of Plaintiffs Adam Thayne and Jerrail Taylor.

32.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each of the Defendants, including all Defendants sued under fictitious names, was the agent and employee of each of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of this agency or employment.

33.     Plaintiffs are informed and believe and thereon allege that John and Jane Doe Defendants 1 through 35 were police officers, detectives, investigators, and/or officials and each of them approved, ratified, condoned, encouraged, participated in, and/or sought to cover up the continuing pattern or practice of misconduct and/or civil rights violations by Defendants including the unjustified shooting of Dillon Taylor and the unconstitutional detentions of Adam Thayne and Jerrail Taylor.

## JURISTICTION AND VENUE

34.     This action arises under the Second, Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983. Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction of Plaintiffs' state law claims under 28 U.S.C. § 1367.

35.     The claims made in this Complaint occurred and arose in Salt Lake County, State of Utah. Accordingly, venue is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

I.     **The Initial Call and Death of Dillon Taylor**

36.     On August 11, 2014, Dillon was walking with his brother, Jerrail, and cousin, Adam, in the vicinity north of 2100 South and 200 East in Salt Lake City.

37.     At approximately 6:59 p.m., two residents of a nearby retirement home saw Dillon, Jerrail, and Adam walking on 200 East and called a 911 dispatcher.

38.     The caller sounded impaired, intoxicated, and compromised.

39.     The caller stated she was "not sure if it's an emergency," that the party "did not threaten me in any way," and when asked by the 911 dispatcher if she or anyone else was in was in danger, responded, "No, not at all."

40.     The caller reported she felt the boys were "suspicious" because of "just the way they look", and that she should just call it in.

41.     Defendant Cruz responded to the 911 call and headed towards 2100 South and State Street.

42.     Defendant Cruz requested back-up, with Defendants Sylleloglu and Downes responding.

43.     Upon approach, Defendant Cruz saw Dillon, Jerrail, and Adam, cross State Street heading west to the 7-Eleven on the corner of 2100 South and State Street, on the border of Salt Lake City and South Salt Lake.

44.     As Dillon, Jerrail, and Adam exited the 7-Eleven, Defendants Cruz, Sylleloglu, and Downes approached.

45.     Defendant Cruz's body-cam captured the events beginning with Cruz's approach and exit of his vehicle.

46.     Defendant Cruz either immediately or shortly after exiting his patrol car drew his service weapon.

47.     Defendant Downes approached Plaintiffs Jerrail and Adam, detaining them and ordering them to lay on the ground in front of the 7-Eleven.

48.     Defendant Cruz followed Dillon, who was walking west in front of the 7-Eleven and away from the encounter.

49.     Dillon had head phones in the entire time.

50.     As the body-cam shows, Dillon walked west with Defendant Cruz pursuing him from behind, gun drawn, finger on the trigger, trained squarely on Dillon.

51.     Defendant Cruz yelled to Dillon, "get your hands out now, get your hands out, get your … get 'em out!"

52.     In compliance with Defendant Cruz's demands, Dillon turned around, pulled up his hands, and showed them to Defendant Cruz.

53.     As Dillon complied, Officer Cruz fired two shots in rapid succession.

54.     Dillon bled to death within minutes, the body-cam capturing his last breath.

55.     Defendants Sylleloglu and Downes did nothing to stop or deescalate the situation; their actions needlessly escalated a situation that should have been a run-of-the-mill investigation of a non-violent complaint.

56.     Defendant Sylleloglu drew his service revolver and aggressively pursued Dillon alongside Defendant Cruz, escalating the situation without reason or justification.

57.     Similarly, Rather than peacefully approach Plaintiffs Adam and Jerrail, Defendant Downes forced them on to the ground, placing his knee in their backs, and handcuffing them on the pavement without probable cause.

58.     Rather than attempt to use an amount of force appropriate to the non-violent complaint of an uncooperative caller, Defendants Cruz and Sylleloglu immediately went "guns on" in pursuit of Dillon Taylor.

10

59.     Defendants Cruz, Sylleloglu, and Downes instead created a life-and-death conflict where none existed, escalated that conflict, and then aggressively engaged the three boys in a military-esque, enemy-combatant manner.

60.     Defendant Cruz's use of deadly force against the decedent, Dillon Taylor, who had committed no crime, was unarmed, and was walking away from the officers at the time, was without justification or provocation, and occurred only as a result of Defendants Cruz, Downes, and Sylleloglu's unnecessarily escalation of what should have been a fairly routine encounter.

## II.  Unconstitutional Detention of Plaintiffs Adam Thayne and Jerrail Taylor

61.     Plaintiffs Adam and Jerrail had just witnessed their cousin and brother shot, and likely killed, by Defendant Cruz.

62.     Neither Plaintiff Adam nor Jerrail were armed.

63.     Neither Plaintiff Adam nor Jerrail were accused of nor violated any law at or near the time of death of the decedent, Dillon, nor were they known to Defendants Cruz, Downes, or Sylleloglu.

64.     The lead officer on the scene at the 7-Eleven, Sergeant Charlie Goodman, had determined within minutes of Dillon's death that there was no further danger to the public.

65.     Even without any danger presented, Plaintiffs Adam and Jerrail were handcuffed with their hands behind their backs, transported to the Salt Lake City Public Safety Building, and detained in separate interrogation rooms by a series of law enforcement officers.

66.     Neither Plaintiffs Adam nor Jerrail were advised at any time of their constitutional rights under *Miranda* v. *Arizona*, including the right to counsel.

11

67.     Neither Plaintiffs Adam nor Jerrail were advised of any charge or criminal allegation under which they were being held.

68.     Plaintiffs Adam and Jerrail were detained for more than five hours alone, unsure if their brother and cousin had been killed, and unable to notify their families of what had happened.

### A.  Interrogation of Plaintiff Adam Thayne

69.     After more than four hours of being detained, Defendants Hermansen, Kotrodimos, and Delahunty began interrogating Plaintiff Adam.

70.     Plaintiff Adam remained handcuffed with his arms behind his back at all times, and was only temporarily released from them when Defendant Hermansen asked if the others agreed to let Plaintiff Adam diagram the events at 7-Eleven.

71.     After interrogating Plaintiff Adam for approximately thirty minutes, Defendant Hermansen asked Adam if he had any questions of them. Adam responded "Did Dillon die?" to which Defendant Hermansen replied "Uh, yes."

72.      As Defendants Hermansen, Kotrodimos, and Delahunty stood to leave, Defendant Hermansen walked toward Plaintiff Adam telling him "I need to put you in handcuffs, *just for policy of the room*."

73.     With all three officers still present, Defendant Hermansen placed Plaintiff Adam's hands once again behind his back, secured the handcuffs, and left the room.

74.     From immediately after Dillon was shot at approximately 7:12 p.m. until sometime after Plaintiff Adam walked out of the interrogation room, still handcuffed, at 12:27 a.m., Plaintiff Adam had only been free of the handcuffs for approximately twenty minutes.

75.     Defendants Hermansen, Kotrodimos, and Delahunty all had the opportunity to intervene and stop Plaintiff Adam's illegal detention in contravention of the "policy of the room," but none chose to do so. Instead, they left Adam handcuffed and alone in a police interrogation room to grieve his cousin's death.

### B.   Interrogation of Plaintiff Jerrail Taylor

76.     After three hours and forty minutes of being detained, Defendants Sutera, Spangenberg, and Hicken entered the interrogation room to begin their interrogation of Plaintiff Jerrail Taylor.

77.     Prior to the interrogation, Plaintiff Jerrail had twice complained of pain and discomfort to officers who came into the room, and inquired whether the handcuffs could be removed or whether his hands could be placed to the front.

78.     Plaintiff Jerrail's request was denied by an officer who told him "We gotta leave 'em on '*cause it's a policy thing*…."

79.     Plaintiff Jerrail's handcuffs were finally removed by Defendant Sutera at the start of the interrogation, more than three and a half hours after he was detained and arrested in the aftermath of his brother's death.

80.     Like Plaintiff Adam, none of the Defendants read Plaintiff Jerrail his rights under *Arizona v. Miranda*, despite Defendant Sutera referring to Jerrail as a "suspect/witness" in his report.

81.     With Defendants Sutera, Spangenberg, and Hicken present, Jerrail is kept in custody until approximately 12:30 a.m. when he was allowed to join his cousin, Plaintiff Adam, and together walk away from the facility.

82. From immediately after Dillon was shot at approximately 7:12 p.m., until sometime after he rejoined Plaintiff Adam at approximately 12:30 a.m., Jerrail was kept in custody without charge or allegation of criminal activity for more than five hours.

83. Defendants Sutera, Spangenberg and Hicken all had the opportunity to intervene and stop Plaintiff Jerrail's illegal detention in contravention of the "policy thing," but none chose to do so.

84. Instead, they left Jerrail alone, isolated, and detained in an interrogation room, secluded from family and friends, to deal with the trauma of watching his younger brother die.

### III. Prior Shootings by Salt Lake City Police and Unlawful Detentions by Salt Lake City Police, South Salt Lake City Police, and Salt Lake County

85. On June 18, 2014 – only two months before Dillon's death – a Salt Lake City officer shot and killed Sean Kendall's Weimaraner dog, Geist, after entering Mr. Kendall's fully enclosed back yard.

86. Mr. Kendall has sued Salt Lake City for the unlawful and unconstitutional death of his companion, Geist. *See Kendall v. Olsen, et al.*, Case No. 150900558, Third Judicial District Court, Salt Lake County, Utah.

87. Upon information and belief, there are additional reports of shootings, excessive use of force, unlawful detention, and other constitutional violations of citizens' rights by Salt Lake City officers, South Salt Lake City officers, and Salt Lake County investigators.

### IV. Police Officer Training in Salt Lake and South Salt Lake

88. The untimely and unjustified death of Dillon Taylor at the hands of police in Salt Lake County is just one of a string of seemingly ever-increasing use of deadly force by police.

14

89.     Upon information and belief, the recent rise of citizens being shot to death by police is directly related to, and the natural outcome of, the way the officers are trained.

90.     Upon information and belief, each officer in the Salt Lake City and South Salt Lake City Police Departments, as well as investigators working with Salt Lake County, undergo training at Peace Officer Standards and Training ("POST").

91.     Upon information and belief, early in their POST training, all officers are shown a gruesome, horrific, and brutal video depicting the shocking and violent deaths of police officers at the hands of alleged criminal assailants.

92.     Upon information and belief, the rationale behind the POST video is to instill in officers the unrealistic fear that every time they put on their badge, they could be going to a grisly death.

93.     Upon information and belief, because of this video, police officers are trained – either explicitly or implicitly – to view all citizens as potential enemy combatants, and to approach all encounters with them from the perspective that each and every one could lead to the officer's death.

94.     Upon information and belief, each officer who attends POST is only required to attend approximately 640 total hours of training. The remainder of the officer's training beyond those minimum requirements comes from the individual agencies for whom they are employed.

95.     Upon information and belief, both Salt Lake City and South Salt Lake City know of the POST video, support the use of the video in officer training, and continue to train their officers according to its precepts after graduation from POST.

15

96.     Upon information and belief, because of this video and the continued training based thereon which officers at Salt Lake City and South Salt Lake City receive, those officers come to accept as fact an extreme and irrationally aggrandized view of the risks inherent in their job as a police officer.

97.     Upon information and belief, as a result of their training, officers at both Salt Lake City and South Salt Lake City operate under the precept that "it is better to be judged by twelve, than be carried by six," and that any hesitation or judicious use of restraint will result in their death.

98.     Upon information and belief, this mentality is part and parcel of the seemingly ever-increasing murders of citizens at the hands of anxious, fearful, defectively trained police officers.

99.     In sum, Upon information and belief, rather than training their officers to be "peace officers" and to "serve and protect" and work *with* their citizens, Salt Lake City and South Salt Lake City are training their officers to fear everyone, and "shoot first, ask questions later."

## V.   Notice of Claim

100.     On or about June 12, 2015, Plaintiffs personally served three Notices of Claim upon Defendants pursuant to Utah Code Annotated § 63G-7-401.

101.     Plaintiffs served a Notice of Claim each for:   i) The Estate of Dillon Taylor; ii) Adam Thayne; and iii) Jerrail Taylor.

16

102.     On June 23, 2015, Defendant Salt Lake City sent a letter to Plaintiffs, through counsel, acknowledging receipt of the Notice. No further communication was received from Defendant Salt Lake City.

103.     On or around August 18, 2015, Plaintiffs received a call, through counsel, from Travelers Insurance on behalf of Defendant South Salt Lake City. Travelers Insurance inquired as to when Plaintiffs intended to file suit. No further communication was received from Defendant South Salt Lake City.

104.     No communication was received from Defendant Salt Lake County.

## FIRST CAUSE OF ACTION

**(Violation of Civil Rights 42 U.S.C. § 1983 by Plaintiffs Estate of Dillon Taylor, Cody Taylor, Teesha Taylor, and Jerrail Taylor, as representatives of the Estate of Dillon Taylor, against Defendants Cruz, Downes, Sylleloglu, and Does 1 through 5)**

105.     Plaintiffs hereby incorporate and re-allege the preceding paragraphs as though fully set forth herein.

106.     Defendants Cruz, Downes, Sylleloglu, and Does 1 through 5, are police officers employed by the City of Salt Lake and at all relevant times were acting under color of state law.

107.     Plaintiffs bring this claim for relief in their capacity as successors-in-interest and personal representatives of the decedent Dillon Taylor.

108.     The foregoing claim for relief arose in decedent's favor, and decedent would have been the plaintiff with respect to this claim for relief had he survived.

109.     Defendants, acting under color of state law, deprived the decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including

17

those enumerated in and secured by the Fourth Amendment to the Constitution, by subjecting decedent Dillon Taylor to excessive force in the unjustified shooting of decedent.

110.    The Defendant police officers' wrongful acts alleged hereinabove were the cause of death of decedent Dillon.

111.    As a proximate result of the foregoing wrongful acts of Defendants, and each of them, the decedent, Dillon, sustained general damages, including pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount according to proof.

112.    In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard of the Constitutional rights of the decedent, Dillon. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

113.    As further damage, Plaintiffs have incurred and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988, are entitled to recovery of costs and fees in pursuing rights for a violation of 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

**(Violation of Civil Rights 42 U.S.C. § 1983 by Plaintiffs Cody Taylor, Teesha Taylor, Jerrail Taylor, and Adam Thayne against Defendants Cruz, Downes, Sylleloglu, and Does 1 through 5)**

114.    Plaintiffs hereby incorporate and re-allege the preceding paragraphs as though fully set forth herein.

115.    Defendants, acting under color of state law, deprived Plaintiffs of their right to a familial relationship without due process of law by their use of unjustified and fatal force against

Dillon Taylor with deliberate intent to cause Dillon harm so that he could not and would not

return home to his family, in violation of rights, privileges, and immunities secured by the First

and Fourteenth Amendments to the United States Constitution.

116.     As a result of the foregoing wrongful acts of Defendants, and each of them,

Plaintiffs sustained general damages, including grief, emotional distress, pain and suffering, loss

of comfort and society, and special damages, including loss of support, in an amount according

to proof.

117.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in

reckless and callous disregard of the Constitutional rights of Plaintiffs. The wrongful acts, and

each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of

punitive damages against each individual defendant in an amount adequate to punish the

wrongdoers and deter future misconduct.

118.     As further damage, Plaintiffs have incurred and will continue to incur attorneys'

fees, and pursuant to 42 U.S.C. § 1988, are entitled to recovery of costs and fees in pursuing

rights for a violation of 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

**(Violation of Civil Rights 42 U.S.C. § 1983 by Plaintiffs Jerrail Taylor and Adam Thayne against Hermansen, Kotrodimos, Delahunty, Sutera, Spangenberg, Hicken, and Does 6 through 20)**

119.     Plaintiffs hereby incorporate and re-allege the preceding paragraphs as though

fully set forth herein.

120.     Defendant Kotrodimos, Spangenberg, and Does 6 through 10 are police officers and/or detectives employed by the City of Salt Lake and at all relevant times were acting under color of state law.

121.     Defendants Hermansen, Sutera, and Does 11 through 15 are police officers and/or detectives employed by the City of South Salt Lake and at all relevant times were acting under color of state law.

122.     Defendants Delahunty and Hicken, and Does 16 through 20 are police officers and/or investigators employed by Salt Lake County and at all relevant times were acting under color of state law.

123.     Defendants, acting under color of state law, deprived Plaintiffs Jerrail and Adam of their rights, privileges, and immunities secured by the Constitution and laws of the United States, including those enumerated in and secured by the Fourth Amendment to the Constitution, by subjecting Plaintiffs Jerrail and Adam to an unconstitutional detention, arrest, and interrogation.

124.     Without probable cause or other Constitutional justification, Defendants arrested, detained, and interrogated Plaintiffs Jerrail and Adam for over five hours.

125.     Unlawful detention and arrest of a witness to an officer involved shooting was clearly established constitutional law at the time of the detention and arrest here. *Walker v. City of Orem*, 451 P.3d 1139 (10th Cir. 2006).

126.     As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Plaintiffs Jerrail and Adam sustained general damages, including mental and emotional

20

pain and suffering, and a loss of the enjoyment of freedom and other hedonic damages, in an amount according to proof.

127.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard of the Constitutional rights of Plaintiffs Jerrail and Adam. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

128.     As further damage, Plaintiffs have incurred and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988, are entitled to recovery of costs and fees in pursuing rights for a violation of 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

**(Violation of Civil Rights 42 U.S.C. § 1983 – *Monell* by Plaintiffs Estate of Dillon Taylor, Cody Taylor, Teesha Taylor, Jerrail Taylor, and Adam Thayne against Defendants Chief Brown, Salt Lake City, and Does 21 through 25)**

129.     Plaintiffs hereby incorporate and re-allege the preceding paragraphs as though fully set forth herein.

130.     Plaintiffs bring this claim for relief in their capacity as the successors-in-interest and personal representative of the decedent.

131.     Defendants Chief Brown, Salt Lake City, and Does 21 through 25, knowingly and with gross negligence, maintain, permit, and ratify policies and customs which allow the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the constitutional rights of citizens.

132.     Within the two months prior to Dillon Taylor's death, another Salt Lake City police officer unlawfully entered Sean Kendall's enclosed back yard and used his Salt Lake City issued service revolver to shoot Mr. Kendall's Weimeraner dog, Geist.

133.     Upon information and belief, there are other incidents of Salt Lake City police officers using unlawful and unconstitutional force when interacting with citizens.

134.     Salt Lake City's deliberate indifference in the training of its law enforcement officers related to the use of reasonable force and lawful seizures, as well as the deliberate indifference by the police department's hierarchy to the safety of its citizens or the adherence to the Constitution's protection of individual rights, are the moving force behind the misconduct engaged in by Defendants Cruz, Downes, and Sylleloglu.

135.     Further, Salt Lake City's ratification of police misconduct, along with its failure to conduct adequate investigations of misconduct, led to the violations of the Plaintiffs' and the decedent's constitutional rights.

136.     Plaintiffs are informed and believe, and thereon allege, that the customs and policies of the Salt Lake City police department were the moving force behind the violations of Plaintiffs' rights. Based upon the principles set forth in *Monell v. New York City Dept. of Social Services*, the City of Salt Lake is liable for all the injuries sustained by Plaintiffs as set forth above.

137.     Due to the conduct of Defendants, and each of them, Plaintiffs have incurred and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988, are entitled to recovery of costs and fees in pursuing rights for a violation of 42 U.S.C. § 1983.

///

## FIFTH CAUSE OF ACTION

**(Violation of Civil Rights 42 U.S.C. § 1983 – Deprivation of the Rights of Plaintiffs to a Familial Relationship with the Decedent –** *Monell* **by Plaintiffs Cody Taylor, Teesha Taylor, Jerrail Taylor, and Adam Thayne against Defendants Chief Brown, Salt Lake City, and Does 21 through 25)**

138.    Plaintiffs hereby incorporate and re-allege the preceding paragraphs as though fully set forth herein.

139.    Defendants Chief Brown, Salt Lake City, and Does 21 through 25, knowingly and with gross negligence, maintain, permit, and ratify policies and customs which allow the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the constitutional rights of citizens.

140.    Within the two months prior to Dillon Taylor's death, another Salt Lake City police officer used his Salt Lake City issued service revolver to shoot the Weimeraner dog of Sean Kendall, Geist.

141.    Upon information and belief, there are other incidents of Salt Lake City police officers using unlawful and unconstitutional force when interacting with citizens.

142.    Salt Lake City's deliberate indifference in the training of its law enforcement officers related to the use of reasonable force and lawful seizures, as well as the deliberate indifference by the police department's hierarchy to the safety of its citizens or the adherence to the Constitution's protection of individual rights, are the moving force behind the misconduct engaged in by Defendants Cruz, Downes, and Sylleloglu.

23

143.    Further, Salt Lake City's ratification of police misconduct, along with its failure to conduct adequate investigations of misconduct, led to the violations of the Plaintiffs' and the decedent's constitutional rights.

144.    Plaintiffs are informed and believe, and thereon allege, that the customs and policies of the Salt Lake City police department were the moving force behind the violations of Plaintiffs' rights. Based upon the principles set forth in *Monell v. New York City Dept. of Social Services*, the City of Salt Lake is liable for all the injuries sustained by Plaintiffs as set forth above.

145.    In acting as alleged herein, Defendants, and each of them, caused Dillon Taylor's demise and severe physical and emotional injuries to the surviving Plaintiffs, thereby causing Plaintiffs to be damaged in an amount according to proof.

146.    Due to the conduct of Defendants, and each of them, Plaintiffs have incurred and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988, are entitled to recovery of costs and fees in pursuing rights for a violation of 42 U.S.C. § 1983.

## SIXTH CAUSE OF ACTION

**(Violation of Civil Rights 42 U.S.C. § 1983 – *Monell* by Plaintiffs Jerrail Taylor and Adam Thayne against Defendants Chief Carruth, South Salt Lake City, Chief Brown, Salt Lake City, Salt Lake County, and Does 26 through 35)**

147.    Plaintiffs hereby incorporate and re-allege the preceding paragraphs as though fully set forth herein.

148.    Defendants Chief Carruth, South Salt Lake City, and Does 26 through 30, knowingly and with gross negligence, maintain, permit, and ratify policies and customs which

allow the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the constitutional rights of citizens.

149.    Defendants Chief Brown, Salt Lake City, and Does 31 through 35, knowingly and with gross negligence, maintain, permit, and ratify policies and customs which allow the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the constitutional rights of citizens.

150.    Defendant Salt Lake County knowingly and with gross negligence, maintains, permits, and ratifies policies and customs which all the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the constitutional rights of citizens.

151.    The identities of other Defendants, including officials, detectives, and other investigators, named as Doe defendants herein who may have been charged with creating or implementing policy are currently unknown to Plaintiffs. Plaintiffs will amend their complaint if necessary to name these individuals as Plaintiffs learn of their identities.

152.    South Salt Lake City police officers expressed separately to both Plaintiff Adam and Plaintiff Jerrail that there is a "policy" of having detainees remain in handcuffs while in an interrogation room, even if it is clear that there is no probable cause of other constitutionally adequate justification to detain the person. Those South Salt Lake City police officers made the statements during separate interrogations conducted at the Salt Lake City Public Safety Building. And Salt Lake City police officers were there witnessing and acquiescing to the stated "policy", along with Salt Lake County officers or investigators doing the same. Thus, upon information and belief, South Salt Lake City Police Department, Salt Lake City Police Department, and/or Salt Lake County in general each, separately, or combined have a "policy" of having detainees

remain in handcuffs while in an interrogation room, even if it is clear that there is no probable cause of other constitutionally adequate justification to detain the person.

153.    Upon information and belief, there are other incidents of South Salt Lake City, Salt Lake City, and Salt Lake County police officers, detectives, and investigators detaining similarly situated people as Plaintiffs Adam and Jerrail.

154.    South Salt Lake City, Salt Lake City, and Salt Lake County's deliberate indifference in the training of its law enforcement officers related to lawful and constitutional detentions and seizures, as well as the deliberate indifference by the those agencies' hierarchy to the safety of its citizens or the adherence to the Constitution's protection of individual rights, are the moving force behind the misconduct engaged in by Defendants Hermansen and Sutera, employed by South Salt Lake; and ratified by Defendants Kotrodimos and Spangenberg, employed by Salt Lake City; and Defendants Delahunty and Hicken, employed Salt Lake County, who acquiesced to, followed, or otherwise enforced South Salt Lake City, or Salt Lake City, or Salt Lake County's unconstitutional "policy."

155.    Further, South Salt Lake City, Salt Lake City, and Salt Lake County's ratification of police misconduct, along with its failure to conduct adequate investigations of misconduct, led to the violations of the Plaintiffs Jerrail and Adam's constitutional rights.

156.    Plaintiffs are informed and believe, and thereon allege, that the customs and policies of the South Salt Lake City and Salt Lake City police departments, as well as Salt Lake County, were the moving force behind the violations of Plaintiffs Jerrail and Adam's rights and ratification of those violations by all Defendants present during the interrogations. Based upon the principles set forth in *Monell v. New York City Dept. of Social Services*, the City of South

Salt Lake, Salt Lake City and Salt Lake County are liable for all the injuries sustained by Plaintiffs as set forth above.

157.    Due to the conduct of Defendants, and each of them, Plaintiffs have incurred and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988, are entitled to recovery of costs and fees in pursuing rights for a violation of 42 U.S.C. § 1983.

## SEVENTH CAUSE OF ACTION

**(Wrongful Death – Negligence by Plaintiffs Cody Taylor, Teesha Taylor, and Jerrail Taylor against Defendants Cruz, Downes, Sylleloglu, Salt Lake City, and Does 1 through 35)**

158.    Plaintiffs hereby incorporate and re-allege the preceding paragraphs as though fully set forth herein.

159.    Defendant Cruz, acting within the scope of his duties as a police officer with the City of Salt Lake City, was negligent when he shot and killed decedent Dillon Taylor, an individual with whom he came in contact in his capacity as a police offer.

160.    Defendants Downes, Sylleloglu, and Does 1 through 35, acting within the scope of their duties as police officers with Salt Lake City, were negligent when they failed to adequately respond to the investigation or otherwise take steps to prevent Defendant Cruz from using deadly force when he shot the decedent Dillon Taylor, an individual with whom they came in contact in their capacity as police officers.

161.    Defendant Chief Brown, as a supervisor, owed a duty to the public to properly train and supervise the police officers under his command. Defendant Chief Brown failed to provide adequate training, supervision and guidance to Cruz, Downes, and Sylleloglu, all leading to the untimely and unwarranted death of Dillon Taylor.

27

162.     Defendants owed decedent Dillon Taylor a duty to conduct themselves reasonably and safely so as not to harm Dillon Taylor who was unarmed with headphones in his ears and who ultimately complied with Defendant Cruz's demands to put his hands up.

163.     Defendants are liable for their negligent acts pursuant to Utah Code Ann. § 63G-7-301(4).

164.     Plaintiffs filed timely claims pursuant to Utah Code Ann. § 63G-7-401.

165.     Plaintiffs are proper parties with standing pursuant to Utah Code Ann. § 78B-3-105, and hereby pursue remedies on behalf of their brother and for the wrongful death of their brother, against Defendants, and each of them, for pecuniary loss and other compensable injuries resulting from the loss of the society, comfort, attention, services, and support of the decedent.

166.     The loss of their brother will continue to cause great and severe damages to Plaintiffs, all in an amount according to proof.

167.     As further direct result of the acts, omissions, negligent conduct, and/or reckless disregard for the safety of decedent by Defendants, and each of them, Plaintiffs have incurred funeral and burial expenses in an amount according to proof.

168.     As a further direct result of the acts, omissions, negligent conduct, and/or reckless disregard for the safety of decedent by Defendants, and each of them, Plaintiffs have incurred medical bills and other incidental costs and expenses in an amount according to proof.

169.     Plaintiffs are of minimal financial means and thus request that the Court set the undertaking required pursuant to Utah Code Ann. § 63G-7-601 at $300 which is the minimal amount allowed by that section.

170.     Plaintiffs likewise submit that they do not have the financial means or collateral to post the necessary bond pursuant to Utah Code Ann. § 78B-3-104. Moreover, the bulk of the claims here sound in federal law, which has no bond requirement. Thus, pursuant to the dictates of that statute, Plaintiffs' financial situation, and the fact that the fees that may be necessary to defend this matter will be required to defend the federal claims in any event, Plaintiffs respectfully request that the Court not require a bond be posted in this matter.

## **JURY DEMAND**

Plaintiffs demand a jury trial on all causes of actions and claims alleged herein.

\*       \*       \*

29

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant, and each of them, as follows:

1.     For general damages in an amount according to proof;

2.     For special damages in an amount according to proof;

3.     For punitive damages against the individual officers, in an amount according to proof;

4.     For pre-judgment and post-judgment interest as provided under applicable law;

5.     For reasonable attorneys' fees and costs where applicable;

6.     For costs of suit herein incurred; and

7.     For such other relief as the Court may deem just and proper.

DATED this 28th day of October 2015.

THE SALT LAKE LAWYERS


/s/ Robert B. Cummings_____
Robert B. Cummings
*Attorneys for Plaintiffs*


GERAGOS & GERAGOS, APC


/s/ Mark Geragos_____
Mark Geragos
Ben Meiselas
*Electronically signed with permission*


KELLY FOWLER, ATTORNEY AT LAW

30

/s/ Kelly A. Fowler
Kelly A. Fowler
*Electronically signed with permission*

*Attorneys for Plaintiffs*

**Plaintiffs' Address**
In care of:
Kelly A. Fowler
KELLY FOWLER, ATTORNEY AT LAW
10 Exchange Place, Ste. 622
Salt Lake City, Utah 84101
Telephone: (801) 520-6995
Facsimile: (801) 747-6849